IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------
CHRISTINA LOWDER, et al.,

                    Plaintiffs,

          -vs-

CUYAHOGA COUNTY DEPARTMENT
OF CHILDREN AND FAMILY
SERVICES, et al.,

                    Defendants.
------------------------------------------------

: CASE NO. 1:11 CV 01964
:
: <u>MEMORANDUM OF OPINION AND</u>
: <u>ORDER</u>

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter comes before the Court on a motion for judgment on the pleadings filed by the defendants Cuyahoga County, Ohio ("Cuyahoga County"), Cuyahoga County Department of Children and Family Services ("Family Services"), and Family Services employees Kimberly Kuczma and Darrell Harris (collectively, "the defendants").[1] (Doc. 22). The plaintiffs have responded in opposition, and the

---

[1]Defendant Nasheema Anderson, who has been served with the complaint and summons, remains unrepresented by counsel and has not appeared in this matter. (Doc. 21). She accordingly does not join in the motion presently before the Court.

defendants have replied. For the reasons that follow, the defendants' motion will be granted.

## I. Background

The following factual summary, derived from the plaintiffs' complaint, is accepted as true for the purposes of the present motion. JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007).

Plaintiffs Christina Lowder and Ellison Wildon filed this lawsuit as guardians ad litem of four children, M.A., B.A., K.A., and J.A, (hereinafter "the children"), alleging violations of the federal constitution and state law. (Doc. 1, ¶6). Defendant Family Services is a county agency responsible for the administration of matters affecting the custody of children. (Doc. 1, ¶7). At all times relevant herein, the individually named defendants were employees of Family Services. Defendant Nasheema Anderson, née Hillmon (hereinafter "Ms. Hillmon/Anderson"),[2] was a Family Services social worker. (Doc. 1, ¶9). Defendant Kimberly Kuczma was Ms. Hillmon/Anderson's supervisor. (Doc. 1, ¶11). Defendant Darrell Harris was the chief of the department in which Ms. Hillmon/Anderson worked. (Doc. 1, ¶12). Defendant Cuyahoga County was substituted pursuant to Federal Rule 25(d) in the place of James McCafferty, former Cuyahoga County Administrator. (Doc. 13; non-document order 1/13/2012).

The children were born to Rochelle Kidd and Victor Anderson between 1994 and 2000. In 2004, Ms. Kidd and Mr. Anderson were married. (Doc. 1, ¶14). In March 2004,

---

[2] The parties refer to defendant Nasheema Anderson variously as "Ms. Anderson," "Ms. Hillmon," and "Ms. Hillmon/Anderson." In the interest of clarity, the Court refers to her throughout this opinion as "Ms. Hillmon/Anderson."

2

defendant Family Services became involved with the family upon reports that Ms. Kidd was abusing one or more of the children. (Doc. 1, ¶15). The children were removed from the Kidd/Anderson home and placed with a maternal aunt. (Doc. 1, ¶15). Family Services assigned Ms. Hillmon/Anderson to work with the family as its social worker. (Doc. 1, ¶15). A case plan was prepared for the purpose of reunifying the family. (Doc. 1, ¶¶15-16). Ms. Hillmon/Anderson's role as social worker was to assist in meeting this goal. (Doc. 1, ¶16).

At some point thereafter, Ms. Kidd and Mr. Anderson separated. The social worker, Ms. Hillmon/Anderson, then began a romantic relationship with Mr. Anderson while continuing to act as the family's social worker. (Doc. 1, ¶17). In October 2004, with the assistance of Ms. Hillmon/Anderson, Mr. Anderson was awarded custody of the children, even though he allegedly failed to fulfill the requirements of the case plan. (Doc. 1, ¶18). At some point, custody of the children was returned to Ms. Kidd, but only temporarily and without the knowledge of Family Services. (Doc. 1, ¶19). The children were later returned to Mr. Anderson. In April 2005, Family Services was alerted to Ms. Hillmon/Anderson and Mr. Anderson's relationship, and it initiated an investigation. (Doc. 1, ¶20). At this time, there were allegations of drug abuse and child abuse on the part of Mr. Anderson. (Doc. 1, ¶20). In May 2005, a second case of neglect was brought, and Ms. Hillmon/Anderson was again assigned as the family's social worker, despite the defendants' knowledge of Ms. Hillmon/Anderson's romantic relationship with Mr. Anderson. (Doc. 1, ¶21).

In June 2005, Mr. Anderson and Ms. Kidd were divorced. (Doc. 1, ¶23). Ms. Hillmon/Anderson convinced Ms. Kidd to relinquish custody of the children to Mr.

3

Anderson. (Doc. 1, ¶23). In July 2005, Ms. Hillmon/Anderson and Mr. Anderson were married, and Ms. Hillmon/Anderson continued to act as the family social worker. (Doc. 1, ¶¶24-25).

In September 2005, Family Services moved for legal custody of the children to be granted to Mr. Anderson. (Doc. 1, ¶26). The motion was supported by the sworn affidavit of Ms. Hillmon/Anderson, now the wife of Mr. Anderson and the step-mother of the Anderson children. (Doc. 1, ¶26). In the affidavit, Ms. Hillmon/Anderson swore that she was the assigned social worker; and that she "visited the Anderson residence and found the home and living situation appropriate." (Doc. 1, ¶27). The juvenile court ultimately granted custody of the children to Mr. Anderson.

On 16 September 2011, plaintiffs Ms. Lowder and Mr. Wildon, Guardians ad Litem, brought this civil rights suit in eight counts on behalf of the children.[3] (Doc. 1). The plaintiffs maintain that Ms. Hillmon/Anderson violated the children's procedural and substantive due process rights when she continued to serve as the family social worker while having a romantic relationship with Mr. Anderson. (Doc. 1, ¶¶30-32). The plaintiffs further maintain that Family Services, Cuyahoga County, Ms. Kuczma, and Mr. Harris, having had knowledge of Ms. Hillmon/Anderson's conduct and having failed to curtail it, are also constitutionally liable. (Doc. 1, ¶¶33-35). The plaintiffs also allege state law claims of abuse of process, loss of consortium, negligence, recklessness,

---

[3]Prior to filing of the present suit, Ms. Kidd filed a nearly identical complaint on her own behalf and as next friend to the children against the same defendants named herein. See Rochelle Kidd v. Cuyahoga County Department of Children and Family Services, Case No. 1:09-cv-2278 (N.D. Ohio filed 2 October 2009). On motion of the defendants, the Court dismissed that matter without prejudice on 16 September 2010.

intentional/negligent infliction of emotional distress, and child stealing. (Doc. 1, ¶¶36-53).

Defendants Family Services, Cuyahoga County, Kimberly Kuczma, and Darrell Harris now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 22).

## II. The Applicable Standard

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." Winget, 510 F.3d at 581 (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to a Rule 12(c) motion for judgment on the pleadings. Roth v. Guzman, 650 F.3d 603, 605 (6th Cir. 2011). A 12(b)(6) motion tests the sufficiency of the complaint. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## III. Law and Argument

Although the defendants seek dismissal on a number of grounds, only two need be addressed. As explained below, the moving defendants are entitled to qualified immunity with respect to the plaintiffs' federal claims. Further, Ohio Revised Code

5

Chapter 2744, the Political Subdivision Tort Liability Act, entitles the defendants to immunity with respect to the plaintiffs' state law claims.

### A. Qualified Immunity

The defendants raise the defense of qualified immunity, which shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Smoak v. Hall, 460 F.3d 768, 777 (6th Cir. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Whether qualified immunity applies is a legal question for the Court to resolve. Elder v. Holloway, 510 U.S. 510, 516 (1994); Tucker v. City of Richmond, 388 F.3d 216, 219 (6th Cir. 2004). To answer this question, the Court employs a two-part test, deciding (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008) (internal quotation marks omitted). When a defendant raises a qualified immunity defense, the burden falls on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. Baker v. City of Hamilton, 471 F.3d 601, 605 (6th Cir. 2006).

In their complaint, the plaintiffs allege that their substantive and procedural due process rights were violated when the defendants acquiesced to Ms. Hillmon/Anderson's decision to act as the family social worker while simultaneously being engaged in a romantic relationship with Mr. Anderson. Upon review of the plaintiffs' allegations in light of the applicable law, the court is not persuaded that the defendants violated the plaintiffs' due process rights.

6

First, the plaintiffs' allegations do not give rise to a substantive due process claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedure used." Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996). "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997). In the present case, the plaintiffs claim substantive due process violations in both categories.

They contend, first, that their constitutional guarantee to family integrity was violated when the defendants decided to retain Ms. Hillmon/Anderson as the family social worker following the revelation that she was romantically involved with Mr. Anderson. (Doc. 1, ¶3). The trouble with this argument is that while the right to family integrity is a recognized constitutional guarantee, Washington v. Glucksberg, 521 U.S. 702, 719-20 (1997), the plaintiffs provide no clearly established precedent to support the proposition that they, as children, may assert this right. As described by the Supreme Court, the right to family integrity is a "fundamental right of *parents* to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 65–66 (2000) (emphasis added); accord Lassiter v. Dep't of Soc. Servs. of Durham Cty., 452 U.S. 18, 27, (1981) ("a parent's desire for and right to the companionship, care, custody and management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection."); Kottmyer v. Maas, 436 F.3d 684, 690 (6th Cir. 2006) ("parents enjoy a constitutionally protected interest in their family integrity."). This

7

Court's research reveals no Supreme Court precedent clearly establishing that a child shares the same liberty interest in preserving familial bonds.[4]

The second problem for the plaintiffs is that assuming they possess the asserted liberty interest, Family Services and the other defendants who allegedly acquiesced to Ms. Hillmon/Anderson's role as social worker had no role in violating their supposed rights. On this point, <u>Pittman v. Cuyahoga County Dept. Of Children and Family Services</u>, 640 F.3d 716 (6th Cir. 2011), is instructive. In that case, a father who had lost custody of his children, alleged that a family services social worker violated his right to family integrity when the social worker's detrimental misrepresentations caused family services to conclude that the father was an unfit caregiver. <u>Id.</u> at 729. The <u>Pittman</u> court

---

[4]  As stated in <u>Troxel v. Granville</u>, the Supreme Court "has not yet had occasion to elucidate the nature of a child's liberty interests in preserving established familial or family-like bonds." <u>Troxel v. Granville</u>, 530 U.S. 57, 88 (2000) (Stevens, J., dissenting); <u>see also Michael H. v. Gerald D.</u>, 491 U.S. 110, 130 (1989) (reserving the question). The plaintiffs do not cite, and this Court's research has not revealed, any case after <u>Troxel</u> in which the High Court offered a definitive opinion on the issue.

On the other hand, there is non-binding support for the idea that children have a liberty interest in maintaining family integrity. While acknowledging that the law remains unsettled, Justice Stevens' dissent in <u>Troxel</u> indicates that "it seems . . . extremely likely that, to the extent parents and families have fundamental liberty interests in preserving such intimate relationships, so, too, do children have these interests." <u>Troxel</u>, 530 U.S. at 88. However, in the present case, the plaintiffs fail to provide any argument at all with respect to this unsettled constitutional question.

In any event, even if the plaintiffs were to have persuaded the Court that the children possess a liberty interest in family integrity, the "clearly established" component of the qualified immunity analysis would still bar their claim. As already noted, the plaintiffs cite no binding precedent that would have put the defendants on notice that by acquiescing to Ms. Hillmon/Anderson's conduct, they were violating any due process right that the children may have had.

concluded that the father's substantive due process rights were not violated, because family services was "merely a party to the juvenile court proceedings, tasked with presenting to the juvenile court its recommendation as to the appropriate course of action in a particular case." Id. It was reasoned that "because the juvenile court has the ultimate decisionmaking power with respect to placement and custody, it alone could deprive [the father] of his fundamental right." Id.

In the present case, similar to Pittman, Family Services made recommendations to the juvenile court, and those recommendations were supported by the affidavit of Ms. Hillmon/Anderson. As in Pittman, it was the juvenile court, not the defendants, that ultimately granted Mr. Anderson custody of the children. As a consequence, because the ultimate decisionmaking power rested with the juvenile court, the defendants did not deprive the children of their right to family integrity (assuming the children may even assert this right).

The plaintiffs also allege a violation of the second category of substantive due process rights, namely those that "shock the conscience." As variously described by the United States Supreme Court, this is conduct that violates "the decencies of civilized conduct," Rochin v. California, 342 U.S. 165, 172–173 (1952), that does "not comport with traditional ideas of fair play and decency," Breithaupt v. Abram, 352 U.S. 432, 435 (1957), and that interferes with rights "implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987). The ultimate question is whether the challenged conduct "can properly be characterized as arbitrary, or conscience shocking, *in a constitutional sense.*" Collins v. City of Harker Heights, Tex., 503 U.S. 115, 128 (1992) (emphasis added).

9

As explained by the United States Supreme Court, this inquiry is guided by two principle considerations:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the crucial "guideposts for responsible decisionmaking," that direct and restrain our exposition of the Due Process Clause.

Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (internal citations omitted).

In engaging this analysis, federal courts must observe restraint in any expansion of substantive due process rights. See Collins, 503 U.S. at 125. "By extending constitutional protection to an asserted right or liberty interest," a court largely "place[s] the matter outside the arena of public debate and legislative action." Glucksberg, 521 U.S. at 720. As a consequence, courts are cautioned to tread lightly whenever "asked to break new ground in this field." Collins, 503 U.S. at 125. The risk otherwise, as explained by the Supreme Court, is that "the liberty protected by the Due Process Clause [could] be subtly transformed into the policy preferences of [the judicial officer]." Glucksberg, 521 U.S. at 720 (citing Moore v. City of E. Cleveland, Ohio, 431 U.S. 494, 502 (1977)).

In the present case, there is little question that Ms. Hillmon/Anderson's decision to act as the family social worker while romantically involved with Mr. Anderson created a conflict of interest. And it appears likely that Ms. Hillmon/Anderson's conduct violated

the Social Worker's Code of Ethics.[5] However, the plaintiffs have failed to supply any historical, textual, or controlling precedential support for their argument that the defendants' alleged acquiesence to the conflict of interest amounts to a violation of the plaintiffs' substantive due process rights. Without having provided those "crucial guideposts for responsible decisionmaking," the plaintiffs essentially ask the Court to create "a new due process right out of thin air." See Carlisle v. United States, 517 U.S. 416, 429 (1996). The Court respectfully declines the invitation.

The plaintiffs also claim a violation of their procedural due process rights. "Procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." Bartell v. Lohiser, 215 F.3d 550, 557 (6th Cir. 2000). To establish a violation of their procedural due process rights, the plaintiffs must show (1) that they were deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law. Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002); see also Bangura v. Hansen, 434 F.3d 487, 496 (6th Cir. 2006).

As discussed above, the plaintiffs have failed to establish that they have been deprived of a protected liberty interest. Moreover, assuming the plaintiffs had

---

[5] Under the Code of Ethics of the National Association of Social Workers, social workers should "avoid conflicts of interest that interfere with the exercise of professional discretion and impartial judgment." Further, "[s]ocial workers should not take unfair advantage of any professional relationship or exploit others to further their personal, religious, political, or business interests." And social workers may "under no circumstances engage in sexual activities or sexual contact with current clients, whether such contact is consensual or forced." (Defendants' Exhibit 2, Doc. 18-2, p. 13).

11

established such a deprivation, they fail to make even a single argument on the question whether the process they did receive was constitutionally deficient.

In sum, the plaintiffs have not met their burden to show that qualified immunity does not apply in this instance. The complaint, when viewed in a light most favorable to the plaintiffs, fails to establish that their due process rights were violated when the defendants allowed Ms. Hillmon/Anderson to act as the family social worker while simulaneously engaging in a romantic relationship with the plaintiffs' biological father. As a consequence, the plaintiffs' federal constitutional claims will be dismissed.[6]

### B. State Law Immunity Pursuant to Ohio Revised Code Chapter 2744

As for the plaintiffs' supplemental state law claims, the defendants maintain that they are entitled to immunity pursuant to Ohio Revised Code Chapter 2744, the Political Subdivision Tort Liability Act. Under Chapter 2744, Ohio courts employ a three-tier analysis to determine whether a political subdivision is entitled to immunity from civil liability. Cater v. Cleveland, 83 Ohio St.3d 24, 28 (1998). At the first tier, section 2744.02(A)(1) sets out a general rule that political subdivisions are not liable for

---

[6] In addition to their federal claims, plaintiffs assert a number of state law claims under the Court's supplemental jurisidiction. When a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over claims brought under 28 U.S.C. § 1367(a). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" City of Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997)(quoting Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). The present matter has been pending for a number years in this Court. In the interests of judicial economy and fairness and convenience to the parties, the Court is inclined to exercise supplemental jurisdiction over the plaintiffs' state law claims. However, as explained *infra*, pp. 13-14, the plaintiffs' state law claims against the moving defendants will, in any event, be dismissed on other grounds.

damages. Greene Cnty. Agric. Soc. v. Liming, 89 Ohio St.3d 551, 556-57 (Ohio 2000). This general grant of immunity applies regardless of whether the injury or loss is allegedly the result of negligence, an intentional tort, or some intermediate level of misconduct such as recklessness, willfulness, or wantonness. EJS Properties, LLC v. City of Toledo, 651 F.Supp.2d 743, 759 (N.D. Ohio 2009). Under the second tier of the analysis, it must be determined whether any of the exceptions in section 2744.02(B) apply. Greene Cty. Agric. Soc., 89 Ohio St.3d at 557. If any of the exceptions are found to apply, the third tier of analysis requires a consideration of the defenses found in section 2744.03. Id.

In this instance, the plaintiffs do not dispute that at the first tier, the defendants qualify for the general grant of immunity found in section 2744.02(A)(1). However, plaintiffs contend that an exception should apply in this instance, and they cite a doctrine known as the "special relationship" exception. According to the plaintiffs, a political subdivision may be liable for damages if it can be shown that there existed

> (1) an assumption of an affirmative duty by a political subdivision, (2) knowledge on the part of the political subdivision or its agents that inaction could cause harm, (3) a direct contact between the political subdivision's agents and the injured party, and (4) that party's justifiable reliance on the political subdivision's affirmative undertaking.

Sawicki v. Village of Ottawa Hills, 37 Ohio St. 3d 222, 231 (1988).

This argument has no merit, as the Ohio Supreme Court has explicitly rejected the application of the "special relationship" exception in this context. See Rankin v. Cuyahoga Cty. Dep't of Children & Family Servs., 118 Ohio St. 3d 392, 397 (2008). The Rankin court explained that the "special relationship" exception is a common law principle relevant to a determination whether a defendant owes a legal duty to a

plaintiff. Id. However, the court reasoned, it is "not an independent exception to a political subdivision's general immunity from liability," because the "special relationship" exception is not codified in R.C. 2744.02(B). Id. Therefore, the Court rejects the plaintiffs' argument that the "special relationship" exception applies in this instance.

The plaintiffs invoke none of the exceptions codified in R.C. 2744.02(B), and upon review, it is the Court's opinion that none of them apply in this instance.[7] The defendants are accordingly entitled to immunity from the plaintiffs' state claims pursuant to the Political Subdivision Tort Liability Act.

### C. The Plaintiffs' Claims against Ms. Hillmon/Anderson

This leaves the issue of the plaintiffs' claims against Ms. Hillmon/Anderson, who is unrepresented by counsel and has never made an appearance in this matter. In light of the analysis set forth *supra*, pp. 11-14, the Court is inclined to dismiss the claims against Ms. Hillmon/Anderson, because they are substantially the same as the claims asserted against the moving defendants. However, before acting on its inclination to dismiss *sua sponte* for failure to state a claim upon which relief can be granted, the Court must (1) "give the plaintiff a chance to amend the complaint or respond to notice of intended dismissal," and (2) " if the claim is dismissed, . . . state the reasons for dismissal." Morrison v. Tomano, 755 F.2d 515, 516 (6th Cir. 1985). The Court will

---

[7] The exceptions listed in R.C. 2744.02(B) are summarized as follows: (1) Injury caused by negligent operation of a motor vehicle by a governmental employee while acting within the scope of employment; (2) Injury caused by negligent performance of a proprietary function; (3) Injury caused be negligent failure to keep the public roads open and in repair; (4) Injury caused by the negligence of employees that occurs in the buildings or on the grounds of the political subdivision and is due to physical defects within or on the grounds; and (5) Express imposition of liability by statute.

accordingly allow the plaintiffs thirty days to amend the complaint as to claims against Ms. Hillmon/Anderson only or otherwise respond to the Court's notice of intended dismissal.

### IV. Conclusion

For the reasons stated above, the defendants' motion for judgment on the pleadings is granted. All claims against defendants Cuyahoga County Department of Children and Family Services, Cuyahoga County, Ohio, Kimberly Kuczma, and Darrell Harris are accordingly dismissed. Within 30 days, the plaintiffs shall show cause why the claims against Ms. Hillmon/Anderson should not be dismissed for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

_Lesley Wells_
UNITED STATES DISTRICT JUDGE

Date: May 29 2014